IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LETICIA PEREA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18 C 5984 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| RUSH UNIVERSITY MEDICAL CENTER, | ) | |
| DR. MICHAEL KREMER *in his individual* | ) | |
| *capacity*, JUDY WILEY *in her individual* | ) | |
| *capacity*, AMY GAWURA *in her individual* | ) | |
| *capacity*, LAUREN SMITH *in his individual* | ) | |
| *capacity*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Leticia Perea brought a two count complaint against Rush University Medical Center, Dr. Michael Kremer, Judy Wiley, Amy Gawura, and Lauren Smith, alleging race and national origin discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et seq. ("Title VI") against Rush (Count I), and tortious interference with contract against the individual defendants. On May 17, 2019, the court dismissed Count II and the individual defendants after plaintiff failed to respond to their motion to dismiss [Doc. 17]. Discovery then proceeded for a five month period during which plaintiff failed to timely respond to defendant's requests, failed to notice depositions in a timely manner and then sought an eleventh hour extension that the Magistrate Judge denied [Doc. 31]. Plaintiff then sought time to pursue expert discovery which this court granted. Plaintiff failed to pursue such discovery, and defendant Rush has now filed a motion for summary judgment, accompanied by the appropriate L.R. 56.1 statement of facts which it contends are undisputed and entitle it to judgment as a matter of law.

Following her well established pattern, plaintiff has failed to respond to defendant's

motion despite having been granted numerous extensions to do so. Receiving no response from plaintiff, defendant filed a reply brief, pointing out that plaintiff had failed to respond, and seeking a ruling based on its submissions only. Incredibly, plaintiff waited three weeks after receiving defendant's reply to seek an additional extension to file her response, and even more incredibly failed to attach a proposed response, asking instead for an additional three weeks. That motion was denied [Doc. 59]. As a result, defendant's statements and the and evidence presented in support of its L.R. 56.1 Statement remain uncontested and are presumed admitted to the extent that they are supported by evidence in the record. See Keeton v. Morningstar, Inc., 667 F.3d 877, 884 (7th Cir. 2012). Because it lacks a response from plaintiff, the court has carefully reviewed the defendant's record evidence and concludes that it supports defendant's statements. As a result, the only question before the court is whether the undisputed facts entitle defendant to judgment as a matter of law. They unquestionably do.

## BACKGROUND

Plaintiff was a student in defendant's Nurse Anesthesia Program, which is designed to train registered nurses to become Certified Registered Nurse Anesthetists ("CRNAs"). Students in the program were referred to as Student Registered Nurse Anesthetists ("SRNAs"). In 2015 plaintiff and her class (referred to as the cohort) started a clinical practicum component of the program in an operating room where they were supervised one-on-one by a CRNA.

Between October 2015 and early July 2016 plaintiff received favorable evaluations from her supervising CRNAs, including Lauren Smith, Amy Gawura, Susan Corpolongo, Lisa Arford, and Emily Klinefelter. Plaintiff's grandmother passed away on July 10, 2016, and things began to turn downhill. Plaintiff's supervising CRNAs' evaluations began to indicate patient safety

concerns related to fundamental aspects of anesthesia care, including medication administration, charting errors and failure to follow directions. Specifically, between July 26, 2016, and August 18, 2016, five different CRNAs in seven different evaluations rated multiple categories of plaintiff's clinical performance as "unsatisfactory." On July 26, Smith gave plaintiff unsatisfactory ratings in pharmacology, completion of preoperative assessments, and promptness. On August 2, Gawura gave plaintiff an overall unsatisfactory performance rating related to patient safety, anatomy, physiology and pathophysiology knowledge, clinical judgment, and professionalism. On August 5, Ally rated plaintiff unsatisfactory in pharmacology, and on August 9, Corpolongo rated plaintiff unsatisfactory for situational awareness, airway management and recognition, and treatment of intraoperative complications. Plaintiff challenges Smith's and Gawura's evaluations as discriminatory, but "believes" that the Ally and Corpolongo evaluations were both fair and non-discriminatory.

After these first four evaluations containing unsatisfactory ratings, Kremer, the Director of the program, and Wiley, the Associate Director, held an Academic Improvement Meeting with plaintiff on August 10, 2016. They informed plaintiff that she was assigned a grade of incomplete for the clinical course, and that she had until August 19 to demonstrate substantial improvement, especially in pharmacology knowledge. She was also required to receive CRNA supervision until further notice.

Between August 10 and August 19 plaintiff received 3 more evaluations containing unsatisfactory ratings. On August 16, Smith rated plaintiff unsatisfactory on her knowledge of how to place an intrathecal order instead of an epidural order. Plaintiff testified that she simply "clicked" the wrong order and then did not know how to proceed, but Smith's evaluation stated

3

that plaintiff "absolutely did not understand the difference" and the "devastating consequences that could've ensued."

On August 17, Gawura rated plaintiff unsatisfactory for a dangerous charting error and then being unable to identify the error. Plaintiff admitted the mistake, but Gawura wrote "at this point in training, [plaintiff] should have recognized this grossly incorrect charting. [Plaintiff] said the mistake happened [due to] another CRNA distracting her while charting[.] It is an excuse that is unacceptable." The next day, August 18, Arford was supervising plaintiff but was called to another case and directed plaintiff to stay with the patient until another CRNA came to supervise her. The anesthesiologist did not want to wait and, despite her direction from Arford and her improvement plan, plaintiff took the patient to the operating room and administered the anesthesia.

On August 30, 2016, plaintiff met with Kremer, Wiley, and Klinefelter and was told that the seven unsatisfactory clinical evaluations require a "no pass" grade. Plaintiff's seven unsatisfactory evaluations exceeded any other student except for one student who was dismissed from the program altogether. Plaintiff appealed the grade and lost, retook the course and passed, and graduated from the program just four months after her cohort.

## **DISCUSSION**

Title VI provides that "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI prohibits intentional discrimination only. Alexander v. Sandoval, 532 U.S. 275, 280 (2001).

To avoid summary judgment plaintiff must present evidence sufficient to permit a reasonable jury to conclude that defendant gave her a failing grade because of her race or national origin. See Ortiz v, Werner Enter., Inc., 834 F.3d 760, 765 (7th Cir. 2016). The standard "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse [ ] action." Id. To meet this standard a plaintiff may, but is not required, to rely on the burden shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This framework is just a means of organizing and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases. Volling v. Kurtz Paramedic Servs., Inc., 840 F.3d 378, 383 (7th Cir. 2016). Whatever method is used, the question for the court remains the same. Has the non-moving party provided sufficient evidence to support a jury verdict of intentional discrimination. Morgan v. SVT, LLC, 724 F.3d 990, 997 (6th Cir. 2013).

In the instant case, the answer to that question is a resounding no. The court's review of the record reveals no evidence of discrimination apart from plaintiff's speculation that Smith treated white SRNAs more favorably. There is no evidence in the record to support that speculation. Plaintiff has explanations for most of the unsatisfactory evaluations, and perhaps her explanations have some merit. But there is no evidence that any of the CRNAs' evaluated her based on her race or national origin. What the evidence does reveal is that plaintiff was failing to meet defendant's legitimate expectations. The evidence in the record thus would not allow a reasonable factfinder to conclude that defendant gave plaintiff a failing grade because of her race or national origin. Consequently, defendant's motion for summary judgment is granted.

## **CONCLUSION**

For the reasons described above, defendant's motion for summary judgment [Doc. 36] is granted.


**ENTER:** **August 27, 2020**

_____
**Robert W. Gettleman**
**United States District Judge**